**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICTOR UKADIKE EZEIBE,** | : | |
|       **Plaintiff** | : | **No. 1:19-cv-00189** |
| | : | |
|       v. | : | **(Judge Kane)** |
| | : | |
| **CITY OF YORK and** | : | |
| **JOHN DOES and JANE DOES,** | : | |
|       **Defendants** | : | |

**MEMORANDUM**

Before the Court is Defendant City of York ("Defendant City")'s motion to dismiss Plaintiff's first amended complaint (Doc. No. 24) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 25.) For the reasons that follow, Defendant City's motion will be granted.

**I.  BACKGROUND**

    **A.  Procedural Background**

Plaintiff Victor Ezeibe ("Plaintiff") initially filed this action on February 4, 2019. The complaint asserted constitutional claims under 42 U.S.C. § 1983 as well as state law tort claims against Defendants John/Jane Does ("Individual Defendants") in addition to a Monell claim against Defendant City for failure to train and supervise Individual Defendants and failure to create or implement policies that would require Defendant City to document incidents where police officers draw firearms. (Doc. No. 1.) Defendant City filed a motion to dismiss the complaint (Doc. No. 8) on April 4, 2019. The Court granted Defendant City's motion to dismiss on November 27, 2019, dismissing Plaintiff's state law claims with prejudice while granting Plaintiff leave to amend his federal claims against Defendant City. (Doc. Nos. 14, 15.) Plaintiff subsequently filed a motion for leave to file an amended complaint to add additional claims

(Doc. No. 16), which the Court granted on February 28, 2020.  Defendant City filed the instant motion to dismiss Plaintiff's first amended complaint on March 12, 2020.  (Doc. No. 25.)  Having been fully briefed, (Doc. Nos. 26, 28), the motion is now ripe for disposition.[1]

### B. Factual Background [2]

On the evening of December 16, 2018, Plaintiff, who is of Nigerian descent, was driving his vehicle, a Nissan X-Terra, and was followed by an Individual Defendant's police cruiser from the Shell Gas Station on Roosevelt Avenue to the Turkey Hill Mini Market on West Market Street in York, Pennsylvania.  (Doc. No. 24 ¶ 6-8.)  Upon parking his vehicle, an Individual Defendant shouted at Plaintiff, "Stay in your car! Do not come out of your car!"  (Id. ¶ 9.)  Plaintiff waited in his car, as instructed, and was surrounded by "approximately four to five other York City police cruisers and Individual Defendants."  (Id. ¶ 10.)  Plaintiff was ordered to drop his car keys out the window, after which Plaintiff observed three Individual Defendants aiming firearms at him.  (Id. ¶¶ 11-13.)  Plaintiff alleges that all of the Individual Defendants were Caucasian.  (Id. at 14.)

Plaintiff alleges that he was ordered to exit the vehicle, was handcuffed, and was searched, including in his underwear and pockets.  (Id. ¶¶ 17-19.)  Following the search of his person, Plaintiff asserts that he was confined in the back of a police cruiser while Individual Defendants searched his personal vehicle.  (Id. ¶ 20.)  Plaintiff was escorted out of the police

---

[1] Upon consideration of the briefing in this matter, the Court views Defendant City's motion (Doc. No. 25) as seeking to dismiss counts I-III insofar as these claims are asserted against Defendant City and count IV insofar as it is asserted against the Individual Defendants. Therefore, this Memorandum does not address the sufficiency of counts I-III as asserted against the Individual Defendants.  In light of the Court's decision to dismiss all claims against Defendant City, the Court will direct Plaintiff to identify the Individual Defendants within thirty (30) days and show cause as to why the Court should not close this case.

[2] The following factual background is taken from the allegations of Plaintiff's first amended complaint (Doc. No. 24).

cruiser by Individual Defendants after the completion of the vehicle search, "causing a cut or abrasion to Plaintiff's person in the process." (Id. ¶ 21.)

Plaintiff alleges that "approximately three days following the incident of December 16, 2018," he contacted Defendant City's police department "to inquire about information related to the incident and was informed there were no records pertaining thereto." (Id. ¶ 23.) Plaintiff asserts that "[t]he fact that York City has no record of the December 16, 2018 incident involving Plaintiff suggests that Individual Defendants acted unlawfully and purposely omitted documenting and/or recording the incident." (Id. at 24.) Plaintiff further alleges that "[t]he incident of December 16, 2018 between Individual Defendants and Plaintiff has caused mental and emotional suffering to Plaintiff, including nightmares and panic attacks." (Id. at 22.)

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court need not accept legal conclusions set forth as factual allegations. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's ruling in Twombly and Ibqal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6):  (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

## III.   DISCUSSION

### A.   Plaintiff's False Arrest Claim Under 42 U.S.C. § 1983 (Count I)

#### 1.   Applicable Legal Standard

Count I of Plaintiff's first amended complaint asserts a claim against Defendant City for false arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  In Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court established that municipalities can be held liable for constitutional violations under 42 U.S.C. § 1983.  See id. at 690.  However, municipal liability is limited to those actions for which the municipality itself is actually responsible.  See Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986).  Specifically, liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  See Monell, 436 U.S. at 694.  That is, a municipality is subject to Section 1983 liability to the extent it maintained an unconstitutional custom or policy that caused

the constitutional violations alleged by the claimant, but is not liable for injuries on the sole basis that they were inflicted by its employees.  See id.

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).  A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'"  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997)).  In order to recover from a municipality under this theory of liability, a Plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation."  See City of Canton, 489 U.S. at 385.  Complaints alleging municipal liability under Section 1983 are not subject to heightened pleading standards.  See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  However, a plaintiff attempting to establish a Monell claim must "identify a custom or policy, and specify what exactly that custom or policy was."  See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

In the alternative, a municipality may be liable under Section 1983 for a failure to train, monitor, or supervise; however, the failure alleged in such a circumstance must amount to "deliberate indifference to the constitutional rights of persons with whom the police come in contact."  See City of Canton, 489 U.S. at 388.  In order to establish deliberate indifference, a plaintiff must generally show the failure alleged "has caused a pattern of violations."  See Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Where a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further

training "must have been plainly obvious." See City of Canton, 489 U.S. at 390 n.10.  Further, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'"  See Thomas v. Cumberland Cty., 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)).

### 2. Arguments of the Parties

Defendant City argues that "[t]he alleged failures by the City in Count I closely resemble the alleged failures set forth in the original complaint."  (Doc. No. 26 at 9.)  Specifically, Defendant City notes that Plaintiff does not identify "what specific policies allegedly existed (or did not exist)" that would form the basis for a Monell claim asserting false arrest.  (Id.) Defendant City notes that Plaintiff also fails "to sufficiently plead a causal nexus between [the] alleged failure to train and his alleged injuries."  (Id. at 10.)  Plaintiff's response does not engage with Defendant City's arguments as to whether he has adequately pled a Monell claim based on false arrest.  (Doc. No. 28 at 5-9.)  Instead, Plaintiff argues only that he has adequately alleged the Monell claim based on excessive force in Count II of his first amended complaint.  (Id.)

### 3. Whether the Court Should Dismiss Plaintiff's False Arrest Claim

Upon review of Plaintiff's first amended complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiff's false arrest Monell claim against Defendant City because Plaintiff has failed to sufficiently allege the existence of a municipal policy or custom or the existence of a pattern of prior similar constitutional violations that would put Defendant City on notice as to a need for additional training.  A review of Plaintiff's first amended complaint reveals that Plaintiff's allegations regarding his false arrest claim remain unchanged from his original complaint, which the Court previously determined failed to

adequately plead a Monell claim based on false arrest. In the absence of any alteration to Plaintiff's allegations regarding this claim, in addition to Plaintiff's lack of any argument as to why the Court should not dismiss this claim, the Court once again finds that Plaintiff's allegations consist largely of conclusory assertions echoing the appropriate legal standard without providing factual support. See Twombly, 550 U.S. at 555 (noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Plaintiff's first amended complaint fails to identify an affirmative policy or custom adopted or promulgated by Defendant City that would give rise to municipal liability under Section 1983 for false arrest. See McTernan, 564 F.3d at 658. (stating that "[t]o satisfy the pleading standard, [Plaintiff] must identify a custom or policy and specify what exactly that custom or policy was"). Furthermore, although Plaintiff alleges generally that Defendant City failed to adequately train its police officers in the constitutional requirements regarding use of force and search and seizure, (Doc. No. 24 ¶ 32), Plaintiff does not provide any facts to support that contention. See Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001) (granting a motion to dismiss a failure to train claim where the plaintiff pled no facts to support the contention that his injuries were caused by a failure to train, failed to identify the specific training the city should have offered, and failed to establish training was not provided). Finally, Plaintiff fails to allege any facts from which the Court can infer actual or constructive knowledge by municipal policymakers of a previous pattern of similar constitutional violations, or of the allegedly inadequate training as would be required to impose Section 1983 liability. Compare Estate of Roman v. City of Newark, 914 F.3d 789, 799–800 (3d Cir. 2019) (finding the plaintiff had sufficiently stated a claim for municipal liability based on failure to train where allegations were

supported by identified departmental deficiencies in a consent decree between the city and United States), cert. denied sub nom., Estate of Roman v. Newark, NJ, No. 18-1366, 2019 WL 4921310 (U.S. Oct. 7, 2019), with Goldwire v. City of Phila., 130 F. Supp. 3d 936, 944 (E.D. Pa. 2015) (dismissing a Monell claim against the city where the complaint included no facts supporting allegations that the city inadequately trained and supervised officers); see also Kingsmill v. Szewczak, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (dismissing a Monell claim against the municipal defendant where the plaintiff merely alleged the municipal defendant had knowledge of an officer's history of constitutional violations and failed to investigate, supervise, or discipline the officer absent supporting facts). Accordingly, the Court will grant Defendant's motion to dismiss Plaintiff's Section 1983 claim for false arrest against Defendant City with prejudice.[3]

### B. Plaintiff's Excessive Force Claim Under 42 U.S.C. § 1983 (Count II)

#### 1. Applicable Legal Standard

Count II of Plaintiff's first amended complaint (Doc. No. 24) asserts a claim against Defendant City and Individual Defendants for use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. As discussed, supra, a municipality is subject to Section 1983 liability only to the extent it maintained an

---

[3] District courts must generally extend plaintiffs an opportunity to amend a complaint before dismissal in civil rights cases. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, a court may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." See Foman v. Davis, 371 U.S. 178, 182 (1962). In the present case, Plaintiff was put on notice of the deficiencies present in his complaint by the Court's prior dismissal (Doc. No. 14 at 6-8), was previously granted leave to amend (Doc. No. 15), and nonetheless failed to plead any additional facts to support a Monell claim based on false arrest. Accordingly, the Court finds no reason to allow further amendment of this claim and will dismiss it with prejudice.

unconstitutional custom or policy that caused the constitutional violations alleged by Plaintiff, see Monell, 436 U.S. at 694, or for a failure to train, monitor, or supervise where the failure alleged amounts to "deliberate indifference to the constitutional rights of persons with whom the police come in contact." See City of Canton, 489 U.S. at 388. Additionally, where a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious." See id. at 390 n.10.

### 2. Arguments of the Parties

Defendant City argues that Count II of Plaintiff's first amended complaint fails to set forth any facts to support the conclusory allegations that Defendant City acted with deliberate indifference to the likelihood that Defendant City's police officers would violate Plaintiff's constitutional rights. (Doc. No. 26 at 10-11.) Defendant City notes that Plaintiff refers obliquely to prior complaints of excessive force against Defendant City's police officers, but fails to provide any information regarding "why those prior incidents deserved discipline" or "how the misconduct in those cases is similar to that involved in the present action." (Id. at 11.) Additionally, Defendant City argues that Plaintiff has not identified a causal nexus between any prior misconduct and allegedly inadequate training. (Id.) In response, Plaintiff argues that in the absence of discovery, "it remains to be seen whether any of the Individual Defendants, whose identities are currently unknown, were high-ranking officers who made policies or otherwise directed or acquiesced to the Individual Defendants' use of excessive force." (Doc. No. 28 at 5.) Further, Plaintiff asserts that the existence of other lawsuits filed against Defendant City alleging excessive force sufficiently establishes Defendant City's liability in this case. (Id. at 6.) Specifically, Plaintiff argues that, "[a]ware of these excessive force claims, the City is liable for

failing to take remedial action by way of training, re-training or increased supervision of the Individual Defendants" and notes that in the absence of discovery, it cannot be determined whether any of the Individual Defendants here were the subject of prior complaints.  (Id.)

### 3. Whether the Court Should Dismiss Plaintiff's Excessive Force Claim

Upon review of Plaintiff's first amended complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiff's excessive force Monell claim against Defendant City because Plaintiff has failed to sufficiently allege the existence of a municipal policy or custom or the existence of a pattern of prior similar constitutional violations that would put Defendant City on notice as to a need for additional training.  A review of Plaintiff's first amended complaint reveals the following allegations ostensibly in support of a single-incident failure to train Monell claim based on use of excessive force:

> York City failed to take steps to properly train and supervise Individual Defendants.
>
> Specifically, York City failed to create or implement policies which would require that York City Police document all incidents where officers draw firearms. Alternatively, York City failed to ensure that such policies, if in existence, were carried out.
>
> Specifically, York City failed to ensure that officers were instructed about excessive force or the threat thereof to seize or arrest a person in the absence of probable cause or reasonable suspicion.
>
> Specifically, York City, upon information and belief, was aware that Individual Defendants and/or other police officers arrested individuals in violation of the U.S. Constitution and failed to train, provide proper supervision, or otherwise protect against such abuses.
>
> York City police officers have a history of using excessive force against bystanders, arrestees and detainees as, for example, the following complainants: Raymond Douglas Young (excessive force); Erika Eberhardinger (firing gun into car windshield); Larry Lee Walker (excessive force)[;] Alfredo Montanez (excessive

10

> force); Estate of Juan Bonilla Jr. (deadly force); Khalid Abdulla (personal injury and harassment due to sexual orientation and disability); and Donna and Holly Dull (excessive force).
>
> York City failed in its responsibility to properly train and supervise its police officers in the use of force and the constitutional prohibition against the use of excessive and unreasonable force.
>
> York City acted with deliberate indifference to the likelihood that the Individual Defendants would violate the constitutional rights of persons with whom they come into contact.
>
> Accordingly, York City is liable for the unconstitutional conduct of Individual Defendants within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

(Doc. No. 24 ¶¶ 30-33, 45-48.)  Plaintiff has failed to allege any facts related to the existence of a municipal policy or custom, how the alleged policy or custom allowed the constitutional violation at issue to occur, and has failed to identify a policymaker or decisionmaker responsible for a policy or custom.  Although Plaintiff has attempted to plead a pattern of prior similar constitutional violations that would put Defendant City on notice as to a need for additional training by pointing to the existence of other complaints against Defendant City (Doc. No. 24 ¶ 45), Plaintiff's allegations nonetheless remain inadequate.[4]  Other courts have noted that "mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom."  See Simpson v. Ferry, 202 F. Supp. 3d 444, 453 (E.D. Pa. Aug. 9, 2016).  Further, Plaintiff has not identified a "failure to provide specific training that has a causal nexus with [his]

---

[4] The Court notes that Plaintiff has provided no information about these additional complaints that would show whether the circumstances alleged in this case are sufficiently similar to support a determination that "the situation involves a difficult choice or a history of employees mishandling." See Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (stating that "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." (internal citation omitted))

11

injuries" and has not pled any facts indicating "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." See Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn, 946 F.2d at 1030). Instead, Plaintiff's allegations, as noted above, consist largely of conclusory assertions echoing the appropriate legal standard without providing factual support. Accordingly, the Court will dismiss Plaintiff's excessive force claim against Defendant City.[5]

### C. Plaintiff's Equal Protection Claim Under 42 U.S.C. § 1983 (Count III)

#### 1. Applicable Legal Standard

Count III of Plaintiff's first amended complaint asserts a claim against Defendant City and Individual Defendants for violation of Plaintiff's right to equal protection under the Fourteenth Amendment of the United States Constitution. (Doc. No. 24 at 8-9.) In order to state a claim under Section 1983 for a denial of equal protection, on an individual basis, a plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." See Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) (citing Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)). "[A]t a minimum [a plaintiff must] allege that he was intentionally treated differently from others similarly situated by the defendant and

---

[5] As noted, supra in note three (3), district courts must generally extend plaintiffs an opportunity to amend a complaint before dismissal in civil rights cases. See Fletcher-Harlee Corp., 482 F.3d at 253. The Court acknowledges that this is the first time the Court has specifically evaluated Plaintiff's Monell claim based on excessive force; however, the Court's prior dismissal clearly discussed the deficiencies regarding Plaintiff's attempt to plead a Monell claim in general. Accordingly, the Court finds that Plaintiff had the necessary guidance from the Court as to what would be necessary to adequately state a Monell claim for excessive force and nonetheless failed to plead appropriate facts in his first amended complaint to do so. Therefore, as with Plaintiff's false arrest Monell claim, the Court finds no reason to allow further amendment of this claim and will dismiss it with prejudice.

that there was no rational basis for such treatment." Id.  In order to be similarly situated, parties must be "alike in all relevant aspects."  See Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2018).  Furthermore, any plaintiff seeking to hold a municipality liable for an alleged violation of equal protection would be required to allege sufficient facts to support a claim under Monell.  See Monell, 436 U.S. at 694.

### 2. Arguments of the Parties

Defendant City argues that Plaintiff's equal protection claim, as with his other claims, is "[un]supported by any facts set forth in the First Amended Complaint."  (Doc. No. 26 at 13.)  Specifically, Defendant City notes that Plaintiff alleges no facts to support a contention that he was treated differently from similarly situated individuals.  (Id. at 14.)  In response, Plaintiff argues that "[r]acial profiling violates the Equal Protection Clause."  (Doc. No. 28 at 9.)  Plaintiff further asserts that "in order to develop a discrimination claim, [Plaintiff] needs discovery."  (Id. at 10.)

### 3. Whether the Court Should Dismiss Plaintiff's Equal Protection Claim

Upon review of Plaintiff's first amended complaint, the parties' arguments, and the applicable law, the Court will dismiss Plaintiff's equal protection claim.  A review of Plaintiff's first amended complaint reveals the following allegations ostensibly in support of Plaintiff's equal protection claim:

> As a Black Nigerian male, Plaintiff is a member of a protected class.
>
> All of the Individual Defendants who unlawfully confronted Plaintiff with drawn guns and tackled him to the ground were Caucasian.
>
> At all times, the Individual Defendants acted under color of state law.

> The Individual Defendants targeted Plaintiff because he was a Black male driving an expensive SUV in an undesirable part of the City.
>
> The Individual Defendants engaged in racial profiling when they confronted Plaintiff with drawn guns, then tackling and searching him.
>
> The Individual Defendants were racially motivated when they confined Plaintiff and searched his Nissan X-Terra.
>
> The Individual Defendants are liable to Plaintiff because they denied Plaintiff the Equal Protection of the laws.
>
> York City knows that in the course of police work, officers come into contact with racial and ethnic minorities.
>
> The Individual Defendants' actions in surrounding Plaintiff with drawn guns was a glaring example of racial discrimination.
>
> It may be inferred from the egregiousness of the Individual Defendants' conduct that York City has failed to adequately train and/or supervise the Individual Defendants.
>
> York City's failure demonstrates a deliberate indifference to the constitutional rights of minorities with whom its police officers would come into contact.
>
> Accordingly, York City is liable for the unconstitutional conduct of Individual Defendants within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

(Doc. No. 24 ¶¶ 30-33, 45-48.)  Plaintiff has failed to allege any facts in his first amended complaint that suggest he was treated differently than similarly situated individuals.  Plaintiff's assertions that "[t]he Individual Defendants targeted Plaintiff because he was a Black male driving an expensive SUV in an undesirable part of the City," "[t]he Individual Defendants engaged in racial profiling when they confronted Plaintiff with drawn guns, then tackling and searching him," and "[t]he Individual Defendants were racially motivated when they confined Plaintiff and searched his Nissan X-Terra" are conclusions, not factual averments.  Further,

14

insofar as Plaintiff seeks to allege a Monell claim against Defendant City, Plaintiff's first amended complaint alleges no facts related to the existence of a municipal policy or custom or the existence of a pattern of prior similar constitutional violations that would put Defendant City on notice as to a need for additional training. Accordingly, the Court will dismiss Plaintiff's equal protection claim under Section 1983 against Defendant City with prejudice.[6]

**D.    Plaintiff's Claims for Conspiracy Under 42 U.S.C. § 1985 and Failure to Prevent Conspiracy Under 42 U.S.C. § 1986 (Count IV)**

**1.    Applicable Legal Standard**

It is clearly established that in order to survive a motion to dismiss a claim under 42 U.S.C. § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (citing United Bhd. Of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-829 (1983)). "In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice." Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Rather, a plaintiff must plead facts from which the existence of an agreement between defendants can be inferred. See Parrott v. Abramsen, 200 F. App'x 163, 165 (3d Cir. 2006). Further, a plaintiff must allege "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

---

[6] Consistent with the Court's discussion as to the propriety of amendment for Plaintiff's other claims against Defendant City, the Court finds that Plaintiff was on notice of deficiencies within his pleading of a Monell claim and nonetheless failed to allege sufficient facts to adequately plead a Monell claim based on an equal protection violation. Accordingly, the Court's dismissal of this claim is also with prejudice.

15

conspirators' action' in order to state a claim." See Farber, 440 F.3d at 135 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

A claim for failure to prevent conspiracy pursuant to 42 U.S.C. § 1986 necessarily depends on an underlying claim under Section 1985. It is clearly established that "[i]n order to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." See Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994). Furthermore, a plaintiff must allege that:

> (1) the defendant had actual knowledge of a § 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation; (3) the defendant neglected or refused to prevent a § 1985 conspiracy; and (4) a wrongful act was committed.

See id. at 1295 (citing Perez v. Cucci, 725 F. Supp. 209, 254 (D.N.J. 1989), aff'd, 898 F.2d 142 (3d Cir. 1990)).

### 2. Arguments of the Parties

Defendant City asserts that Plaintiff has not pled a conspiracy claim. (Doc. No. 26 at 15.) Specifically, Defendant City argues that "Plaintiff does not aver that an agreement occurred nor does he outline the general nature of an agreement" and that "[t]here are no allegations upon which a conspiracy could be inferred." (Id.) In response, Plaintiff argues that the agreement was "obvious" because "multiple Individual Defendants surrounded Plaintiff's car with guns drawn" and "[t]hey were positioned around Plaintiff's vehicle, much like a team with a common goal." (Doc. No. 28 at 11.) Plaintiff asserts that "[Defendants'] conduct was consistent with an "agreement" as they worked together to detain and restrain Plaintiff without probable cause." (Id.) Further, Plaintiff argues that the conspiracy was obvious because none of the Individual Defendants told Plaintiff why he was stopped and searched. (Id.)

16

### 3. Whether the Court Should Dismiss Plaintiff's Claims for Conspiracy Under Section 1985 and Section 1986

The Court finds that Plaintiff has failed to state a claim for conspiracy under Section 1985. As noted above, under Twombly and Iqbal, a plaintiff must plead facts in support of a claim rather than legal conclusions. A review of Plaintiff's first amended complaint reveals the following allegations in support of his conspiracy claims under Section 1985 and Section 1986:

> The Individual Defendants knew or should have known that their actions violated federal and State laws, but they purposely ignored the law and proceeded to violate Plaintiff's constitutional rights.
>
> The Individual Defendants acted in concert in that each had a role in the use of excessive force when confronting, detaining and searching Plaintiff and in their search of his vehicle.
>
> The Individual Defendants had a common purpose, namely detaining and searching Plaintiff because of his race and ethnicity.
>
> The Individual Defendants violated Plaintiff's constitutional rights, said unlawful purpose and concerted action being a civil conspiracy, under 42 U.S.C. §1985(3).
>
> At no time did any of the Individual Defendants try to dissuade or prevent any other Individual Defendant from violating Plaintiff's constitutional rights, thereby incurring liability pursuant to 42 U.S.C. §1986..

(Doc. No. 24 ¶¶ 66-70.) The Court finds these allegations wholly conclusory. It is clearly established that bare allegations "of 'conspiracy' or 'concerted action' will not suffice" to state a claim under Section 1985. See Flanagan, 783 F. Supp. at 928. Accordingly, the Court finds that Plaintiff has once more failed to state a claim under Section 1985. In the absence of a Section 1985 claim, Plaintiff's Section 1986 claim must also fail. Therefore, the Court will dismiss Plaintiff's conspiracy claims under 42 U.S.C. §§ 1985-1986 with prejudice.[7]

---

[7] Consistent with the Court's earlier discussion of the propriety of amendment as it pertains to Plaintiff's other claims, the Court finds that, as Plaintiff was on notice of the deficiencies in his

**IV.     CONCLUSION**

For the foregoing reasons, Defendant City's motion to dismiss (Doc. No. 25) will be granted.  An Order consistent with this Memorandum follows.

---

Section 1985 claim and failed to correct those deficiencies in his first amended complaint, the Court will not grant further leave to amend this claim.